FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
OCT 0 9 2018
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 18-mj-4182
IN THE SEARCH OF A LG CELLULAR TELEPHONE )
Model LGMS5210, ASSIGNED IMEI )
359998-08-860148-1 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A - Property to Be Searched.

located in the ___Middle___ District of ___Tennessee___, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B - Items to Be Seized.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to possess with intent to distribute a controlled substance |
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute a controlled substance |

The application is based on these facts:

See attached Statement in Support of Application for Search Warrant consisting of pages 1-8 incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA Task Force Officer Donald Hardin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/09/2018

_____
*Judge's signature*

City and state: Nashville, Tennessee        Alistair Newbern, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

A LG CELLULAR TELEPHONE Model LGMS5210, ASSIGNED IMEI 359998-08-860148-1 (Subject Telephone).

The **Subject Telephone** described above is currently stored in the DEA Nashville District Office, which is located at 801 Broadway Suite 500, Nashville, Tennessee 37203.

# ATTACHMENT B

## Items to Be Seized

All records and information on the **Subject Telephone** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846, by Travis Lamont Suggs and his associates and / or co-conspirators including:

a. lists of customers and related identifying information;

b. all telephone numbers and direct connect numbers or identities assigned to the device;

c. telephone book or list of contacts;

d. call and direct connect history information, including incoming and outgoing numbers dialed or received;

e. any text messages which were drafted, sent or received;

f. stored photographs, videos and text messages;

g. GPS location history;

h. internet search history, to include social media sites;

i. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

j. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

k.  any information recording the user's schedule or travel;

l.  all bank records, checks, credit card bills, account information, and other financial records.

m.  evidence of user attribution showing who used or owned by **Subject Telephone** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF LG CELLULAR TELEPHONE Model LGMS5210 ASSIGNED IMEI 359998-08-860148-1 (**Subject Telephone**) | Case No. **18-MJ-4182** |

**STATEMENT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Donald Hardin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of electronic devices currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been a DEA TFO since March of 2011. I am currently assigned to the DEA Nashville District Office. I have worked in law enforcement since September 1994. I have completed the Tennessee Law Enforcement Training Academy Basic Police School, Counterdrug Operations Course, Methamphetamine Laboratory investigations, Drug Enforcement Administration Basic Investigators Course, Interview and Interrogation, Intelligence Analysis,

Financial Investigative Techniques as well as other specialized training. I have also served as an embedded law enforcement advisor to the U.S. Army in support of Operation Enduring Freedom in Afghanistan.

3. In my role as a Task Force Officer for DEA, I have conducted narcotics and drug-related investigations involving violations of international, federal, and state narcotics laws. Currently, I am responsible for investigating crimes that involve the unlawful importation and exportation of illegal narcotics, the possession with the intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, the related crime of laundering monetary instruments, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 1956 and 1957.

4. In conducting these investigations, I have used a variety of investigative techniques and resources, which include, but are not limited to, conducting physical and electronic surveillance, court-authorized wiretaps, and managing the use of cooperating sources ("CS" or "informants"). Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with how narcotic traffickers: import, package, transfer and distribute narcotics; use cellular telephones; use numerical codes, text messages, code words and other methods of avoiding detection by law enforcement; and profit off certain types of narcotics. I also have experience debriefing defendants, co-conspirators, witnesses, and informants who have been involved in unlawful drug trafficking activities. During the course of my career, I have participated in numerous State and Federal Title III wire intercept operations, resulting in the court authorized interception of tens of

thousands of conversations and text messages between drug traffickers and their associates. I have expressed my opinion as to the content of these communications in both State and Federal Court.

5. The information contained in this affidavit is based on my training and experience, my personal participation in this investigation and information provided to me by other law enforcement officials, including witness or informant interviews. I have also reviewed audio recordings of telephone calls and/or reviewed text messages between a CS and Travis SUGGS described below. Where conversations are related herein, they are related in substance and in part, unless otherwise specified. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this statement, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (the "**Target Offenses**") have been committed by **Travis SUGGS**. There is also probable cause to believe that the information described in Attachment B will constitute evidence of these criminal violations.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is as follows: LG CELLULAR TELEPHONE Model LGMS5210, ASSIGNED IMEI 359998-08-860148-1 (**Subject Telephone**). The **Subject Telephone** is currently stored in the DEA Nashville District Office, which is located at 801 Broadway Suite 500, Nashville, Tennessee 37203.

8. The applied-for warrant would authorize the forensic examination of the **Subject Telephone** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. On March 9, 2018, Agents interviewed a Cooperating Source, hereinafter the CS, at the Clarksville Police Department. The CS,[1] who had not been utilized by law enforcement previously to make controlled purchases of drugs, had sought to cooperate with Agents in hopes of receiving favorable consideration on weapons and drug charges pending against the CS in the State of Tennessee.

10. The CS told Agents he was introduced to SUGGS on March 7, 2018 through a third party who knew SUGGS and who also knew the CS was cooperating with Agents. The CS stated the third party introduced the CS and SUGGS in order for the CS to obtain drugs, specifically methamphetamine from SUGGS. The CS told Agents in substance that SUGGS advised the CS that he (SUGGS) gets large quantities of methamphetamine. The CS believed SUGGS' source of methamphetamine was operating in the Bowling Green, Kentucky area.

11. The CS told Agents he and SUGGS discussed SUGGS selling methamphetamine to the CS. The CS also provided Agents with two telephone numbers that SUGGS provided to the CS in order to communicate with the CS and sell him methamphetamine. These numbers were 270-306-9000 and 856-830-2271. Agents subsequently subpoenaed these telephone numbers. 270-306-9000 was a Sprint telephone number subscribed to in the name of Bonnie Suggs, 216 E Gallatin, Adairville, Kentucky. Agents subpoenaed 865-830-2271 and found that it was subscribed in the name Larry Vinvcent, 1112 Nutwood Street, Bowling Green, KY 42103. I know from the investigation that Bonnie Suggs is the mother of Travis SUGGS.

---

[1] CS's are referred to using only masculine pronouns regardless of gender

12. On March 14, the CS and SUGGS communicated via telephone, SUGGS using the 865-306-9000 number, and arranged for the CS to purchase approximately one half pound of methamphetamine from SUGGS. These calls were recorded by law enforcement with the consent of the CS. I have listened to the content of calls between SUGGS and the CS and based on my training and experience and information provided by the CS, I know SUGGS and the CS discussed SUGGS selling approximately one half pound of methamphetamine to the CS. During one conversation, the CS and SUGGS discussed the quantity of methamphetamine, the meeting location and the price the CS would pay SUGGS for the methamphetamine. During the conversation with the CS, SUGGS offered to provide the CS with methamphetamine on front. Because the CS and SUGGS could not agree on the meeting location for SUGGS to sell the methamphetamine, the meeting between the CS and SUGGS was postponed to a later date.

13. On March 21, 2018, SUGGS and the CS again communicated with each other via text message and voice conversations to arrange for SUGGS to deliver the methamphetamine to the CS at an agreed upon location and time. The content of the communications were relayed to me by other law enforcement Agents on March 21, 2018. As described below, I and other Agents watched as SUGGS arrived at an agreed upon meeting location to sell methamphetamine to the CS. Agents consensually monitored and recorded the CS as the CS communicated with SUGGS to make final arrangements for the meeting location for the intended sale.

14. Agents watched as SUGGS arrived at the meeting location and as the CS got into SUGGS vehicle. The CS had previously been equipped with an amount of pre-recorded U.S. Currency with which to purchase the methamphetamine. While the CS was in SUGGS vehicle, Agents moved forward to arrest both the CS and SUGGS after hearing conversation between SUGGS and the CS indicating that the drugs were present in the vehicle and the transaction was

5

occurring. When Agents attempted to arrest SUGGS, SUGGS exited his vehicle and attempted to flee from the scene. SUGGS was apprehended at the scene after a short pursuit on foot. SUGGS continued to actively resist law enforcement and struggled against being handcuffed.

15. The CS was also arrested. When Agents had searched the CS's vehicle prior to the scheduled transaction with SUGGS, a firearm and additional methamphetamine were recovered from the CS's vehicle and were not within the scope of the CS's cooperation with law enforcement. The CS was thus charged with state offenses for methamphetamine and firearm found in his vehicle. A thorough search of the CS and his vehicle prior to CS meeting with SUGGS revealed no additional contraband, and the CS was surveilled by Agents from the staging location to the meeting location with SUGGS.

16. Agents recovered a large quantity of suspected methamphetamine from SUGGS vehicle. I have reviewed laboratory reporting for the methamphetamine that SUGGS brought to sell to the CS and found it was 305.48 grams of a mixture and substance containing d-Methamphetamine Hydrochloride. According to the laboratory report, it is 99% pure plus or minus 4%. According to this same report, 302.42 grams is pure methamphetamine.

17. Agents also recovered the aforementioned pre-recorded U.S. Currency provided to the CS by Agents from the front passenger seat of SUGGS' vehicle. Agents compared serial numbers on the currency found in SUGGS vehicle with currency issued to the CS to purchase the methamphetamine from SUGGS and verified this was the same currency issued to the CS to purchase the methamphetamine from SUGGS. Additional U.S. Currency was recovered from SUGGS person that did not contain pre-recorded currency issued to the CS to purchase methamphetamine from SUGGS.

18. When Agents arrested SUGGS, we located three cellular telephones, including the **Subject Telephone**. The phones were either on his person, lying on the ground in the vicinity of his vehicle or were in his vehicle. I know ~~at least one of them~~ The Subject Telephone was used to communicate with the CS to make arrangements to sell him the agreed upon amount of methamphetamine. These phones are in the custody of the Drug Enforcement Administration and remain unchanged from when they were seized.

19. SUGGS was charged federally with possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and is currently pending trial.

20. The events described herein occurred in Montgomery County, located in the Middle District of Tennessee.

### **DRUG TRAFFICKERS USE OF CELL PHONES**

21. Based upon my training and experience, I know that persons who are involved in the possession and distribution of controlled substances, and who conspire to do so, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, commonly use their cellular phones, SIM cards, and SD Cards to do the following:

   a. Maintain records and other data from various forms of communication related to their sale and distribution of controlled substances;

   b. Discuss and negotiate their sales of controlled substances via telephone calls and text messages, and keep phone numbers of their co-conspirators within their cellular phones. Those individuals also frequently keep a list of names and numbers of customers and suppliers in the electronic address books within their cellular telephones;

   c. Generate, transfer, count, record and/or store records, invoices, receipts, bank statements, and other related records;

7

d. Maintain addresses and telephone numbers of their co-conspirators; and

e. Store photographs of themselves, their co-conspirators, and their property, including photographs of controlled substances and proceeds from the sale of those controlled substances.

22. In my training and experience, examining data stored on devices of the type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23. Additionally, based upon my training and experience, I know that persons who are involved in the possession and distribution of controlled substances, and who conspire to do so, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, often carry multiple cells phones at once. They often use different phones to speak with their respective suppliers/customers/other co-conspirators in order to make it more difficult for law enforcement to intercept their calls and text messages. They also often will use a rotation of different cell phones and SIM cards for that same reason.

## CONCLUSION

24. I believe that based upon the totality of facts and circumstances described above, probable cause exists to search the **Subject Telephone** for evidence and instrumentalities of and concerning violations of Title 21, U.S.C., Sections 841(a)(1) and 846. In consideration of the foregoing, I respectfully request that this Court issue a search warrant for the examination of the **Subject Telephone** described in Attachment A and authorize the DEA to view and download all of the records and information contained in the **Subject Telephone**, as described in Attachment B.